AQUILINA VILLANUEVA CARBALLO, Plaintiff and Appellee, *v.* JUAN SUÁREZ PÉREZ ET AL., Defendants and Appellants.

No. 4694. Argued June 18, 1929.—Decided May 27, 1930.

*Feliú & La Costa* for appellants.   *M. Martínez Dávila* for appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

From the statement of the case and opinion filed by the

Judge of the District Court of San Juan we transcribe the following recital of the facts proved at the trial in this case:

"Plaintiff Aquilina Villanueva Carballo is a testamentary heir of Manuel Falú Benítez, who died on November 22, 1923, according to deed No. 30, dated August 28, 1923, at Río Piedras, and executed before notary Enrique Díaz Viera. She was designated as heir to the usufruct of one-half interest in the estate of the testator Manuel Falú Benítez, and also heir to the naked ownership of one-half of the estate which included the portion of which she had been designated as the usufructuary.

"The defendant, Gumersindo Falú, was also designated as heir of the ancestor Manuel Falú Benítez, according to the same will dated August 28, 1923, and executed before notary Enrique Díaz Viera.

"Defendant Gumersindo Falú was appointed executor of the last will and testament of the decedent Manuel Falú Benítez, as appears from the aforesaid will.

"By virtue of the deed of partition, liquidation and allotment of the estate of the ancestor Manuel Falú Benítez, executed before notary Enrique Díaz Viera in July 1924, and bearing number 13 in the protocol of said notary, there was allotted to defendant, Gumersindo Falú, among others, the following property for the payment of a certain mortgage secured by promissory notes payable to bearer:

"'A piece of rural property located in the ward of Sabana Llana of the municipal district of Río Piedras and measuring 161.52 acres (*cuerdas*), equivalent to 63 hectares, 48 ares and 37 centiares. It is bounded on the north by land of H. A. McKormick, the San José lagoon and a channel; on the south by land of the Laguna Fruit Co.; on the east by the 'Campo Rico' farm; on the west by land formerly belonging to Rufino Febres and now to A. J. Sykes, and also by land segregated from the property and now belonging to Scoville & Co.'

"The property above described was allotted to the defendant, Gumersindo Falú, in his capacity as testamentary executor, for the payment of the mortgage above referred to, for the sum of twenty thousand dollars ($20,000) upon the express condition and subject to the stipulation agreed to by the testamentary heirs of Manuel Falú Benítez that, notwithstanding the said property was worth more than twenty thousand dollars, it was awarded for that sum in order that in the event the same should be sold at a price exceeding twenty thousand dollars, the excess price should be distributed proportion-

ately among the testamentary heirs of the said Manuel Falú Benítez according to their respective shares under the said will.

"The defendant, Gumersindo Falú, knew of this stipulation and so did defendant, Juan Suárez Pérez.

"The defendants, Gumersindo Falú and Juan Suárez Pérez, succeeded in selling the property already mentioned, and which is described in the fourth averment of the complaint, to Angel Fernández Ortiz, of Naguabo, for twenty-six thousand dollars, or six thousand dollars in excess of the price at which the said property had been awarded in the deed of partition, liquidation and allotment executed before notary Enrique Díaz Viera.

"The said defendants, Gumersindo Falú and Juan Suárez Pérez, conspiring among themselves and by means of false pretenses made it appear in a deed of sale executed before notary Heriberto Torres Solá, in the town of Río Piedras, under No. 252 and dated September 23, 1924, that the said property had been sold for only twenty thousand dollars, whereas really the actual price and consideration of the sale evidenced by said deed No. 252, executed before Torres Solá, was twenty-six thousand dollars, of which amount the sum of twenty thousand dollars in cash was received by defendants, Gumersindo Falú and Juan Suárez Pérez, from the purchaser of said property, Ángel Fernández Ortiz.

"On the same day, the purchaser Ángel Fernández Ortiz appeared before notary Heriberto Torres Solá and, by deed No. 253, constituted a voluntary mortgage in favor of the defendant, Juan Suárez Pérez, for the sum of six thousand dollars—which was the balance of the actual purchase price and a deferred payment— nominally to secure the performance of certain obligations contracted in favor of the purchaser of the property by the defendant, Juan Suárez Pérez.

"Plaintiff is entitled to three thousand dollars out of the sum of six thousand dollars, which is the difference between the amount for which the property was actually sold and that for which it was allotted.

"The acts executed by the defendants, Falú and Suárez Pérez, constitute a malicious conspiracy on their part, committed for the purpose of defrauding the plaintiff of the portion to which she was entitled from the excess in the purchase price obtained, as appears from said deeds Nos. 252 and 253, executed before notary H. Torres Solá."

Upon the above findings, the court rendered judgment

in favor of the plaintiff and granted her prayer that Juan Suárez Pérez and Gumersindo Falú be adjudged to pay jointly and severally to the plaintiff the sum of three thousand dollars, together with costs, disbursements and attorney's fees.

The present appeal has been taken from that judgment, and appellant Juan Suárez Pérez has assigned the following errors as committed by the trial court:

"1. In concluding and holding as proved that the allotment of the property referred to in the complaint was made subject to any agreement between the heirs of the ancestor Falú Benítez in regard to the distribution of any excess in the purchase price obtained from the sale of such property.

"2. In concluding and holding as proved that appellant Suárez Pérez had knowledge of the alleged agreement.

"3. In concluding and holding as proved that the said property had been sold at a price greater than that at which it had been allotted in partition.

"4. In concluding and holding as proved that the appellant Suárez Pérez and the defendant, Falú, conspired among themselves and by means of false pretenses made it appear that the said property had been sold for a price lower than that actually received.

"5. In concluding and holding as proved that the acts executed by appellant Suárez Pérez in the case at bar constitute a malicious conspiracy to defraud the plaintiff of her alleged share in the alleged excess in the purchase price of the said property.

"6. In denying the motion for nonsuit made by the appellant herein.

"7. In rendering judgment in favor of the appellee and adjudging the defendants to pay $3,000 and in awarding costs against such defendants.

"8. In permitting the plaintiff to introduce, to the prejudice of the appellants herein, parol evidence to prove the existence of the alleged agreement regarding the distribution of any excess in the purchase price of said property."

We will take up first the alleged error in denying the motion for nonsuit.

It has been held by this court that where there is some evidence supporting the essential allegations of the complaint, the granting of a motion for nonsuit is improper.

"The idea of the word *nonsuit* implies that the complainant has not made out a *prima facie* case." *Gandía* v. *Porto Rico Fertilizer Co.*, 28 P.R.R. 516.

". . . a motion of *nonsuit* is like a demurrer to the evidence" *Vargas* v. *A. Monroig e Hijos,* 15 P.R.R. 26, and *Méndez* v. *Banco Comercial,* 26 P.R.R. 586.

"The judgment on a motion for *nonsuit* must rest on the lack of evidence for the plaintiff to sustain his complaint, but no weighing of the evidence is made." *González* v. *González,* 30 P.R.R. 765, and *Calcerrada* v. *American Railroad Co.,* 35 P.R.R. 801.

In *López* v. *Sánchez,* 22 P.R.R. 521, 528, this court cited with approval the holding in *Cummings* v. *H. & L. S. & R. Co.,* 26 Mont. 441, where it was said:

"On motion for *nonsuit,* whatever the evidence is sufficient to prove in favor of the plaintiff must be considered as established; in other words, when such motion is interposed, the truth of the evidence tending to support the plainiff's case must be assumed and must be regarded in the light most favorable to him,—that which the evidence tends to show must be taken as proved. This well-settled rule has been repeatedly declared and applied by this court."

In view of the above precedents, and the plaintiff having introduced such evidence as the testimony of Gumersindo Falú, Etanislao Torres, Angel Banuchi and others in support of the essential averments of the complaint, the district court acted correctly in denying the motion.

The other assignments of error are so connected with each other, that for the purpose of treatment they may be grouped as follows: One group relating to the admissibility of certain evidence, another referring to the weighing of the evidence as to an additional agreement, and still another relating to the weighing of the evidence in regard to conspiracy and fraud.

It has been maintained by the plaintiff that in making the partition of the estate of Manuel Falú Benítez it was stipulated by the heirs that if the property allotted to Gumersindo Falú for the payment of debts yielded, when sold, a price exceeding twenty thousand dollars, such excess would be distributed among the heirs.

The appellants contend that this agreement could not be shown by parol evidence (8th assignment), and that the evidence was adverse to the existence of such agreement (argument, 1st assignment).

In their argument under the eighth assignment of error, the appellants urge that if there was any stipulation regarding the distribution among the heirs of any possible surplus in the sale proceeds, Suárez was not a party to such an agreement and that the said evidence was not admissible as to him.

It is indeed stated in the 6th averment of the complaint that the heirs did make such stipulation, and it is set forth by the 7th averment that Suárez had knowledge thereof. In his answer (record, p. 36) Suárez generally and specifically denies each and every one of the facts alleged. Therefore, the issue was joined before the court on each and every allegation made by the parties, and evidence could be offered on each and every one of such allegations.

As to the introduction of parol evidence regarding the said stipulation, it is our opinion that this was permissible.

In the first place, if Suárez was not a party to the stipulation we are unable to see how he could now claim that what has been put in writing prevails as to him, so that no evidence whatever could be introduced in regard to an additional agreement.

But, apart from this, another reason moves us to deny the existence of that error. If the property was allotted for the payment of a debt, and when sold accordingly the price obtained for the property was greater than the amount of the debt, there is no doubt that the excess yield belonged to

no one else than the heirs; and unless the latter foresaw such contingency and renounced the excess, such excess should not go to the allottee. In the distribution of the estate of Manuel Falú, the allotment *(adjudicación)* to Gumersindo Falú, of the property in question was phrased as follows:

"There is allotted to him,

"For the payment by him of: fifteen thousand dollars represented by the second charge *(baja)*; three thousand dollars represented by the sixth charge; one thousand dollars represented by the seventh charge, and one thousand dollars represented by the bequest to Gerardo Falú,

"The piece of property described in the inventory under letter (F), measuring one hundred and sixty-two and fifty-two one-hundredth acres *(cuerdas)*. The same is allotted to him at twenty thousand dollars."

The property was allotted to him *for the payment* of those charges against the estate. Does that mean that if the allottee sold the property *for the payment of the said charges* for $26,000, he should or could appropriate the excess to himself? We fail to see how an affirmative answer to this query could even be suggested.

If there was an agreement among the heirs in regard to any possible surplus in favor of the estate (and it is our opinion that such an agreement has been sufficiently proved), this may have been shown as an additional agreement, which does not in any way vary or substitute the original allotment. It is true that parol evidence is not admissible against a written contract. This rule, which is enacted in section 25 of our Law of Evidence, is subject to the exceptions set forth in that section. We are dealing, however, with a doctrine which can not be arbitrarily applied or applied so strictly as to constitute a hindrance to the discovery of truth.

Commenting on this rule, it is said in 22 Corpus Juris, at page 1144:

"There is perhaps no rule of law or of evidence which is more flexible or subject to a greater number of exceptions than the rule

which excludes parol evidence offered to vary or explain written documents. It has been said that in the multitude of exceptions much confusion has arisen, so that the exact limit to be placed upon the exceptions depends not only upon the peculiar facts of each case, but also to some extent upon the peculiar cast of thought of the individuals composing the court. It may be stated generally, however, that the courts have endeavored to adapt their rulings, either way, to the obvious demands of abstract justice in each particular case. The result is that, while the decisions are fairly uniform with respect to their abstract statements of the limitations of and exceptions to this rule, when the question arises as to whether a case presenting a particular state of facts comes within the general rule, or is taken out of it by one of the recognized limitations or exceptions, or again brought within it by one of the numerous limitations of and exceptions to those limitations and exceptions, the authorities are in many instances in hopeless conflict.''

The rule is that parol evidence is inadmissible to vary, alter, control or contradict the terms of a written instrument, in an action founded upon such writing, between the parties or privies thereto. (See Chamberlayne on Modern Evidence, vol. 5, p. 4906.)

The application of the rule requires the concurrence of each and every one of the circumstances stated. The rule is effective and true as between the contracting parties or their privies. Accordingly, in *Nicorelli* v. *Ernesto López & Co.*, 26 P.R.R. 49, 53, this court, referring to section 25 of the Law of Evidence, said:

''That section condenses in an admirable manner the doctrine laid down by Jones and refers to the parties, their representatives or successors in interest.''

And citation was made of Jones ''The Blue Book of Evidence'', vol. 3, p. 145. In *Sarria* v. *V. Alvarez & Co.*, 38 P.R.R. 813, the rule contained in said section 25 was applied, but that was an action between the parties to the written instrument, whose contents it was sought to vary or contradict.

In the case at bar, one of the defendants, Gumersindo Falú, a distributee of the estate, made no objection to the proof by parol evidence of the existence of the said agreement regarding a possible excess in the proceeds derived from the sale of the property. On the contrary, he himself testified on this point to confirm it. Really Gumersindo Falú was the person entitled to object; and it is not so evident that the other defendants, who derived no rights or obligations from the said deed or instrument of partition, would be so entitled.

It is advisable to state here that in that deed (page 175 of the transcript of the evidence) there appears the covenant entered into by Aquilina Villanueva, Carlos Agricourt and Gumersindo Falú to inventory and distribute in accordance with the bases of the partition schedule (*cuaderno particional*) any other property belonging to the estate not previously inventoried.

Let us consider now what constitutes and is meant by any surplus or excess in the value of the property allotted to Gumersindo Falú for the payment of certain debts and of a legacy.

We have seen how the allotment was made. A piece of property was allotted to Falú, to be sold by him and the proceeds thereof applied to the payment of certain debts and charges (*bajas*). Now, if the property was sold for a price greater in amount than the valuation given to such property in the inventory and for which it was allotted, could it be claimed that the benefit of that excess should be received by Falú, to the exclusion of other heirs? This is an important point. Neither the heirs entertained any intention to benefit Falú gratuitously, nor does such intention appear from the partition instrument which contained the agreement as to the distribution. On the contrary, from the testimony of Falú who, it seems, should have been the most interested in benefiting himself, it appears that the intention and purpose

to distribute among the heirs any surplus was clear and express.

The appropriation by Falú of any surplus in the price would have been something unjust and unlawful. The old maxim that "one shall not be allowed to enrich himself unjustly at the expense of another," is fully applicable in the present case. There is no legal precept on which Falú could rely for appropriating to himself that surplus. A piece of property was allotted to Falú for him to pay certain charges against the estate amounting to $20,000; the property was not allotted to him to increase his share in the inheritance.

And that being so, we might say that perhaps it would have been unnecessary to submit evidence of the stipulation among the heirs, since in equity and good conscience Falú would never have been the owner of that surplus which, as a part of the assets of the estate, must be distributed among the heirs. Really, the legal position occupied by Falú in this instance was that of an agent of the heirs who had been directed to make a payment and given the means to do so. It could not be urged in a case such as this that the agent could appropriate to himself any surplus remaining from the value of a property, delivered to him for the purpose of making payment. A case might be imagined where a creditor would renounce his claim against the estate, yet it could not be maintained that the allottee to whom property had been awarded for the payment of such claim would be entitled to retain the surplus created in consequence of that waiver.

The assignments of error relating to the admission of said parol evidence can not be sustained.

The appellants have made a skillful and careful analysis of some of the testimony and of what they consider to be serious contradictions on the part of certain witnesses; this was in the argument under the first assignment of error, which reads as follows:

"In concluding and holding as proved that the allotment of the property referred to in the complaint was made subject to any agreement between the heirs of the ancestor Falú Benítez in regard to the distribution of any excess in the purchase price obtained from the sale of such property."

In addition to what we have already said and which must be taken as reproduced at this point, we think that in any partition of property there is involved a true contract, and similarly as to the allotment of property in partition for the payment of debts, which partakes very much of the nature of an agency. It is an elementary rule of the law of contracts that which is condensed and set forth in section 1225 of our Civil Code, as follows:

"Sec. 1225. Contracts are perfected by mere consent, and from that time they are binding, not only with regard to the fulfillment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use, and law."

Not only with regard to its express stipulations is a contract binding, but also with respect to all the natural, moral, or legal consequences of such stipulations. Thus, Falú, to whom a piece of property was allotted for the payment of a certain sum and who sells the same for a larger sum, is naturally and morally bound to return to the estate the excess in the proceeds of such sale.

The appellants lay great emphasis upon certain contradictory statements made by Falú and other witnesses.

Contradictions in the evidence do not have the importance which it has been sought here to attribute to them. Wide latitude should be given the courts in considering and weighing such contradictions and in identifying them as either apparent or real, circumstantial or essential. A case is not determined on a single aspect of the proof, but on the evidence as a whole; nor can it be concluded lightly, but only after serious consideration, that a witness who contradicts himself is wilfully falsifying the truth.

In the present case much importance has been attached to minute details, which could not have exerted any influence on the mind and opinion of the judge. For instance, witness Etanislao Torres spoke about the execution at the deed of sale to Fernández and of the mortgage deed to Suárez, and said that both deeds had been executed before Torres Solá in Río Piedras. The deeds appear to have been signed in Naguabo, at the residence of the purchaser and mortgage debtor. When this fact was being brought to the attention of the witness, his answer was that they were drawn up at the residence of Torres Solá and that they went in a car to Naguabo to have the instruments signed. The explanation is natural and logical.

The most serious charge against witness Falú refers to the stipulation that, should the property be sold for more than $20,000, the excess would be returned to the heirs, and to the notice which Suárez may have had of such stipulation. The witness was first asked whether there had been any stipulation among the heirs and he replied that nothing was said about it; he then stated that he and Suárez were the persons who knew of the stipulation, but he stated positively that it had been agreed between the heirs that any excess that might result should be distributed among them, and that such stipulation was known to the defendant, Juan Suárez, who, as shown by the evidence, concerned himself with the settlement of the estate (*testamentaría*) by advancing money, buying interests in the same at low prices, and even contracting with Falú for the sale of the property, which contract, for reasons unknown to us, was privately executed, without prejudice to the appearance of Falú in the deed of sale of the property, in which Suárez also intervened. Notwithstanding the answers given on cross-examination and the evident contradictions incurred by the witness, in the view of the trial court the existence of the said contract was proved, as also the fact that Suárez was fully aware of the agreement. Similarly it was sufficiently shown that the purchase price

was $26,000, of which Mr. Fernández paid $20,000 in cash and $6,000 in a mortgage executed in favor of Suárez. These conclusions as to the evidence are based on the testimony of Falú, Etanislao Torres, Angel Banuchi and Méndez Vaz. The testimony of the defendant, Suárez, tended to discredit that given by the other witnesses named. It also appears from it that Suárez purchased, at prices lower than those assigned to them in the partition, certain credits and legacies, and that he subscribed with Gumersindo Falú a deed of sale of the property in question. That document is a private instrument and contains stipulations which we can not pass unnoticed. The instrument is copied at pages 205–210 of the transcript of the evidence. It is therein stated that Falú is the owner of the property—which is described—by allotment made to him for the payment of twenty thousand dollars, secured by the property and represented by mortgage notes payable to bearer, and that Falú sells it to Suárez for $25,000, Suárez to pay the mortgage ''without any right to claim compensation in the event Suárez Pérez should sell the property for a greater price, as the excess would be exclusively his, the same as any loss''—a queer precaution and a strange form of agreement.

As part of the evidence herein there is the deed of sale of the property from Falú to Fernández, dated September 23, 1924, in which Juan Suárez Pérez intervened. The sale appears as made by Falú to Fernández for $20,000, the receipt of which is acknowledged in the instrument, and by clause ''Third'' thereof a survey of the property is agreed upon and Falú renounces and assigns to Suárez any number of acres (*cuerdas*) that might result in excess of the 161.52 acres on the basis of which the sale was made, or the value of such excess in area; and it is stated that such waiver is made by Falú in consideration of the fact that he had been unable to pay any commission to Suárez Pérez for having negotiated and advertised the sale, and also of payments made by Suárez for disbursements and counsel fees. On

the same day, a mortgage for $6,000 on the said property was executed by Angel Fernández in favor of Juan Suárez Pérez, who acknowledged receipt of that sum. Both deeds were entered in the protocol of the attesting notary under Nos. 252 and 253. The fact should be noted that the private instrument above referred to was dated August 25, 1924, or approximately one month prior to the execution of the said deeds.

It is also a part of the evidence in this case, an averment included in a complaint filed by Angel Fernández against Gumersindo Falú and Juan Suárez Pérez, setting forth that by deed No. 253 the complainant constituted a mortgage in favor of Juan Suárez Pérez and that the $6,000 appearing from the mortgage was a part of the purchase price of the property and was to be paid to Suárez, who had so stipulated with Falú; and that the $20,000 stated in the deed of sale together with the $6,000 mentioned in the mortgage deed, or $26,000 in the aggregate, constituted the true consideration for the sale of the property. As shown by the evidence, the said complaint was filed in the District Court of San Juan in civil case No. 4152.

Angel Fernández, the purchaser of the property, was not produced as a witness at the trial.

On the evidence above set forth it can not be held that the trial court committed any of the errors urged under the first, second, and third assignments herein.

The fourth and fifth assignments of error refer to the court having declared as proved the conspiracy between Suárez and Falú to make it appear that the property had been sold at a price below the real consideration, thus defrauding the plaintiff of her share in the excess price.

We have already seen the result of part of the evidence. We note the fact that the only evidence introduced by the defendants consists of the testimony of Suárez Pérez and the private instrument already mentioned. The following appears from the testimony of Suárez Pérez:

"Q. Who negotiated the sale with Mr. Fernández?

"A. I, myself.

"Q. And that six thousand dollars appearing from the sale, in your favor, where does it come from?

"A. I sold 161.52 acres to Mr. Angel Fernández at $160 per acre, which makes twenty-five thousand and odd dollars.

"Q. Why did you not make that sum of twenty-five thousand and odd dollars appear as the consideration of the sale?

"A. Because Mr. Falú had sold it to me for twenty thousand dollars.

"Q. And as you did not want the sum of twenty-five thousand and odd dollars to appear as the consideration, did you not then cause a deed to be executed in your favor acknowledging that six thousand dollars? Was that six thousand dollars a part of the purchase price?

"A. Yes, but I had other expenses.

"Q. But I am not talking about expenses, I ask you whether you did not want another figure to appear.

"A. That was an agreement with the notary before whom the deed was executed, that as the sale to me had been for twenty thousand dollars, well, that a similar deed should be drawn.

"Q. But after you purchased nobody had to concern himself with that, because neither did you make the twenty-five thousand and odd dollars appear. . . .

"A. Because only twenty thousand dollars appears."

From all that evidence, there arose in the mind of the trial judge his conviction as to the existence of a conspiracy, without which the acts alleged in the complaint would not have been possible. Direct evidence on the conspiracy was not indispensable. It sufficed that the circumstances proved, when connected with each other and weighed in the mind of the judge, lead to the conclusion reached by the lower court, which is logical and correct.

The said errors, therefore, are non-existent.

Under the stated circumstances, no other judgment could have been rendered than that entered herein by the District Court of San Juan, which did not commit either the error claimed under the seventh assignment or any of the other errors urged by the appellants.

The judgment appealed from must be affirmed.